RECEIVED

IN THE UNITED STATES DISTRICT COURT 2: 04
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CHRISTOPHER THORNTON,          )
          Plaintiff,           )
                               )          CIVIL ACTION NO.
v.                             )
                               )
FREAKY FAST 1 INC.,            )          2:18-CV-36
          Defendant.           )
                               )

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Christopher Thornton, files this Title III, Americans with Disabilities Act (hereinafter "ADA") action, pursuant to 42 U.S.C. §12181, *et seq*. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three of the Complaint, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three of the Complaint seek independent relief in addition to the removal of architectural barriers. Count Four of the Complaint seeks to enjoin Defendant's failure to design and construct the establishment to ADA compliance.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.    Because this is an action for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq*., and its implementing regulations, this Court is

vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.   Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391, and the Local Rules of the United States District Court for the Middle District of Alabama.

3.   Plaintiff, Christopher Thornton, suffered a spinal cord injury. As a result of the injuries he sustained, Mr. Thornton requires a wheelchair for mobility. The extent of Mr. Thornton's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102(2)(A). Mr. Thornton is, accordingly, disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. 12102; *see also,* 28 C.F.R. 36.104.

4.   Defendant, Freaky Fast 1, Inc. (hereinafter "Jimmy John's"), is a corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Freaky Fast 1, Inc. "operates" and "leases" the Jimmy John's restaurants located at 1756 Carter Hill Road, Montgomery, Alabama 36106, 1470 Taylor Road #104, Montgomery, Alabama 36117, and 130 Commerce Street, Montgomery, Alabama 36104. 42 U.S.C. § 12182. The Jimmy John's restaurants are commercial facilities in that the units are intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the establishments provide from-scratch food made with excellent ingredients, that offers locally purchased produce, which is

brought in fresh and hand sliced daily to the public, which qualifies Jimmy John's as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5.  All events giving rise to this lawsuit occurred in the Middle District of Alabama and the Defendant is a citizen thereof.

6.  Plaintiff, Christopher Thornton, is a resident of Montgomery, Alabama. He eats and has eaten downtown and all over the River Region where the Jimmy John's, which are the subjects of this action, are located. Mr. Thornton enjoys eating and intends to dine at Jimmy John's again. Mr. Thornton intends to continue going to the Jimmy John's restaurants because he enjoys the from-scratch food made with excellent ingredients, that offers locally purchased produce, which is brought in fresh and hand sliced daily. Mr. Thornton will return not only to eat, but to also confirm compliance with the ADA by Jimmy John's at these locations. Mr. Thornton does not know exactly when he will go back to the Jimmy John's restaurants, because he has not planned every dining trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See, e.g. Parr v. L & L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.*, No. 11-61766-cn, (S.D. Fla 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment".). Mr. Thornton definitely intends to return to the Jimmy John's restaurants.

7.  Because of the barriers described below in paragraphs 20, 21, 22 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's

premises on the basis of his disabilities.

**8.**     Plaintiff, accordingly, has Article III standing to pursue this case because (1) he is

disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's

restaurants are places of public accommodation, pursuant to the statutory and

regulatory definition; (3) he has suffered a concrete and particularized injury by being

denied access to the restaurants by architectural barriers, by being denied access by

the Defendant's practices described throughout this Complaint, and by Defendant's

denial of the use of the restaurants for his full and equal enjoyment as the able-bodied,

as described throughout the Complaint, and (4) because of these injuries there exists

a genuine threat of imminent future injury, as described in paragraph 18.

## II.     PLAINTIFF'S CLAIMS

### ADA, Title III

**9.**     On or about July 26, 1990, Congress enacted Title III of the ADA, 42 U.S.C. §12181

*et seq.* Commercial enterprises were provided one and a half years from enactment

of the statute to implement its requirements. The effective date of Title III of the ADA

was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, § 36.304.

**10.**    Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's

establishments are places of public accommodation in that they are restaurants

providing from-scratch food made with excellent ingredients, that offers locally

purchased produce, which is brought in fresh and hand sliced daily to the public.

Accordingly, they are covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

### Defendant's Facilities Are Subject to the 2010 ADA Design Standards for the Portions of the Facilities Addressed in this Complaint

11.   Plaintiff is informed and believes based on publicly available information that the
      building in which the Jimmy John's restaurant located at 1756 Carter Hill Road,
      Montgomery, Alabama 36106, was first constructed in 2014. Plaintiff is further
      informed and believes based on publicly available information that the building in
      which the Jimmy John's restaurant located at 1470 Taylor Road #104, Montgomery,
      Alabama 36117, was first constructed in 2017. Plaintiff is further informed and
      believes based on publicly available information that the building in which the Jimmy
      John's restaurant located at 130 Commerce Street, Montgomery, Alabama 36104,
      was constructed in 2015.

12.   Upon Further information and belief based on publicly available information,
      alterations and/or improvements were made to the Jimmy John's restaurants after
      March 15, 2012.

13.   The ADA was enacted requiring that facilities constructed prior to January 26, 1992,
      are considered an existing facility, such that those facilities must remove architectural
      barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).
      All alterations made to existing facilities after January 26, 1992, and all new
      construction after January 26, 1993, must be readily accessible to and usable by
      individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. §

12183(a), (b); 28 C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

14.   New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with

the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15.   For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

16.   The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Jimmy John's in derogation of 42 U.S.C. § 12101 *et seq*., and as

prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a), (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to the benefits, accommodations, and services offered to individuals without disabilities within and about the Defendant's facilities. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishments in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18. Plaintiff has definite plans to return to Jimmy John's in the future, as described in paragraph 6. Plaintiff will return to Jimmy John's within the next few months not only to dine, but also to see if Jimmy John's has repaired the barriers and changed its practices and procedures. Even when Jimmy John's is repaired, Plaintiff will continue to go there to eat. Also, and of vital importance, the barriers are not only created by construction issues; instead, many of them are created by human activity, from the way the Defendant's workers at the establishments use the physical architectural elements of the establishments. The barriers created by human activity will need to be reviewed and maintained forever to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural

barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when he returns to the store." Due to the definiteness of Plaintiff's future plans to continue visiting the subject establishments, there exists a genuine threat of imminent future injury.

## Architectural Barriers

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20. Plaintiff has been from the parking area to the entrance; from the entrance to and throughout the establishment, to the ordering counter, to the pickup; from the dining area, to the toilet room, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 1756 Carter Hill Road, Montgomery, Alabama 36106, more commonly known as "Jimmy John's", violates the ADA in particular but not limited to:

## PARKING TO ACCESSIBLE ROUTE

a) Defendant provides parking spaces in the parking area for able-bodied individuals, but fails to provide any ADA van accessible parking spaces for non-able-bodied

individuals who drive mobility vans which includes but is not limited to the following failures by Defendant:

   i.   There are no "van" accessible parking spaces that measure 132 inches wide with a 60-inch-wide adjacent access aisle, or alternatively measure 96 inches wide with a 96 inch wide adjacent access aisle;

   ii.  There are no van accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of restaurant;

   iii. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

   iv.  Defendant fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking area;

   v.   There are no van accessible parking spaces located at the shortest accessible route to the entrance;

   vi.  Defendant fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

**b)** Defendant provides a route from the parking lot leading to the entrances for able-bodied individuals, but fails to provide an ADA accessible route from the parking

lot to the entrances for non-able-bodied individuals which includes but is not limited to the following failures by Defendant:

>   **i.** The curb ramp has a running slope that exceeds the maximum allowed slope of 1:12;
>
>   **ii.** Defendant fails to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**c)** The floor mats throughout the facility are not stable, firm, or otherwise secured to the floor which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the facility;

## ORDERING COUNTER

**d)** Defendant provides an ordering counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

>   **A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

**i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**iii.** There is no clear floor space that is at least underneath 30 inches wide x 48 inches long provided the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

D. There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendant locates items within the counter surface of the ordering counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the ordering counter;

F. Defendant fails to maintain the accessible features of the ordering counter that are required to be readily accessible to and usable by individuals with disabilities;

## PICK UP COUNTER

e) Defendant provides a pickup counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches

of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendant locates items within the counter surface of the pickup counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the pickup counter;

**F.** Defendant fails to maintain the accessible features of the pickup counter that are required to be readily accessible to and usable by individuals with disabilities;

## INSIDE DINING AREA

**f)** Defendant provides several types of seating in the dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit at Jimmy Johns;

**g)** Defendant provides bar counters for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **i.** There is no ADA accessible route to the bar counter which prohibits disabled individuals from being afforded the opportunity to dine in the elevated table area;

    **ii.** The top surface of the bar counter exceeds the maximum allowed height of 34 inches above the finished floor;

    **iii.** The bar counter fails to provide at least five percent (5%) ADA accessible seating;

    **iv.** The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **v.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **vi.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

> > **vii.** Defendant fails to maintain the accessible features at the bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**h)** Defendant provides booth seating tables for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

> > **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

> > **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

> > **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

> > **iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

> > **v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

      vi.  Defendant fails to maintain the accessible features at the seating tables that are required to be readily accessible to and usable by individuals with disabilities;

**i)**  Defendant provides a dining table for able-bodied individuals at the outside dining area downstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

      i.  The top surface of the seating table exceeds the maximum allowed height of 34 inches above the finished floor;

      ii.  The seating table fails to provide at least five percent (5%) ADA accessible seating;

      iii.  The seating table fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

      iv.  The seating table fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

     **v.**  There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

     **vi.**  Defendant fails to maintain the accessible features of the seating table that are required to be readily accessible to and usable by individuals with disabilities;

## OUTSIDE DINING AREA

**j)**  Defendant provides seating in the outside dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit at Jimmy Johns;

**k)**  Defendant provides dining tables for able-bodied individuals in the outside dining area, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

     **i.**  The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

     **ii.**  The seating tables fail to provide at least five percent (5%) ADA accessible seating;

    **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the outside dining area;

    **iv.** The seating table fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the outside dining area;

    **v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

    **vi.** Defendant fails to maintain the accessible features of the outside seating tables that are required to be readily accessible to and usable by individuals with disabilities;

## TOILET ROOM

**l)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    **i.** The centerline of the water closet exceeds the required 16-18 inches from the side wall;

    **ii.**    The side wall grab bar exceeds the maximum allowed distance of 12 inches from the rear wall from              of 54 inches from the rear wall;

    **iii.**    The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side which prohibits individual with disabilities from being able to transfer onto the water closet;

    **iv.**    The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    **v.**    Defendant fails to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

21. Plaintiff has been from the entrance to and throughout the establishment, to the ordering counter, to the pickup; from the dining area, to the toilet room, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 1470 Taylor Road #104, Montgomery, Alabama 36117, more commonly known as "Jimmy John's", violates the ADA in particular but not limited to:

**ORDERING COUNTER**

    **m)** Defendant provides an ordering counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit

from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

   **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a

maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least underneath 30 inches wide x 48 inches long provided the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendant provides a point of sale machine to transact business at the counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** Defendant locates items within the counter surface of the ordering counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the ordering counter;

> **G.** Defendant fails to maintain the accessible features of the ordering counter that are required to be readily accessible to and usable by individuals with disabilities;

## PICK UP COUNTER

**n)** Defendant provides a pickup counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

> **A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;
>
>> **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;
>>
>> **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;
>
> **B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

        **i.**    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendant locates items within the counter surface of the pickup counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice

of prohibiting disabled individuals from the full and equal opportunity to use and access the pickup counter;

**F.** Defendant fails to maintain the accessible features of the pickup counter that are required to be readily accessible to and usable by individuals with disabilities;

## SEATING IN THE DINING AREA

**o)** Defendant provides seating in the dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit at Jimmy Johns;

**p)** Defendant provides seating tables for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**i.** The top surface of the seating table exceeds the maximum allowed height of 34 inches above the finished floor;

**ii.** The seating table fails to provide at least five percent (5%) ADA accessible seating;

**iii.** The seating table fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

iv. The seating table fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendant fails to maintain the accessible features at the seating tables that are required to be readily accessible to and usable by individuals with disabilities;

**TOILET ROOM**

q) Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

i. The centerline of the water closet exceeds the required 16-18 inches from the side wall;

ii. The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side which prohibits individual with disabilities from being able to transfer onto the water closet;

    **iii.** The trash can obstructs the required clear floor space around the water closet which prohibits individuals with disabilities from being afforded the opportunity to transfer onto the water closet.

    **iv.** Defendant locates the trash can in front of the water closet and consequently obstructs the required clear floor space around the water closet which prohibits individuals with disabilities from being afforded the opportunity to transfer onto the water closet.

    **v.** Defendant fails to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

22. Plaintiff has been from the entrance to and throughout the establishment, to the ordering counter, to the pickup; from the dining area, to the toilet room, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Defendant's facility located at 130 Commerce Street, Montgomery, Alabama 36104, more commonly known as "Jimmy John's", violates the ADA in particular but not limited to:

**ORDERING COUNTER**

    **r)** Defendant provides an ordering counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal

to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **iii.** There is no clear floor space that is at least underneath 30 inches wide x 48 inches long provided the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendant locates items within the counter surface of the ordering counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the ordering counter;

**F.** Defendant fails to maintain the accessible features of the ordering counter that are required to be readily accessible to and usable by individuals with disabilities;

## PICK UP COUNTER

**s)** Defendant provides a pickup counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from,

a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**A.** There is not at least one counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a

maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

**D.** There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendant locates items within the counter surface of the pickup counter and consequently obstructs the required counter surface of the ordering counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the pickup counter;

**F.** Defendant fails to maintain the accessible features of the pickup counter that are required to be readily accessible to and usable by individuals with disabilities;

## SEATING IN THE DINING AREA

**t)**   Defendant provides several types of seating in the dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit at Jimmy Johns;

**u)**   Defendant provides a bar counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

      **i.**   There is no ADA accessible route to the bar counter which prohibits disabled individuals from being afforded the opportunity to dine in the elevated table area;

      **ii.**   The top surface of the bar counter exceeds the maximum allowed height of 34 inches above the finished floor;

      **iii.**   The bar counter fails to provide at least five percent (5%) ADA accessible seating;

      **iv.**   The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

> **v.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;
>
> **vi.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;
>
> **vii.** Defendant fails to maintain the accessible features at the bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**v)** Defendant provides booth seating tables for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

> **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;
>
> **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;
>
> **iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendant fails to maintain the accessible features at the seating tables that are required to be readily accessible to and usable by individuals with disabilities;

w) Defendant provides a dining table for able-bodied individuals at the outside dining area downstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

i. The top surface of the seating table exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The seating table fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating table fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

iv. The seating table fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendant fails to maintain the accessible features of the seating table that are required to be readily accessible to and usable by individuals with disabilities;

## SEATING IN THE OUTSIDE DINING AREA

x) Defendant provides seating in the outside dining area for able-bodied individuals but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit at Jimmy Johns;

y) Defendant provides dining tables for able-bodied individuals in the outside dining area, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals

without disabilities, which includes but is not limited to the following failures of Defendant:

      i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

      ii. The seating tables fail to provide at least five percent (5%) ADA accessible seating;

      iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the outside dining area;

      iv. The seating table fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the outside dining area;

      v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

      vi. Defendant fails to maintain the accessible features of the outside seating tables that are required to be readily accessible to and usable by individuals with disabilities;

## TOILET ROOM

    **z)** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from

a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

i.    The centerline of the water closet exceeds the required 16-18 inches from the side wall;

ii.   The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

iii.  The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side which prohibits individual with disabilities from being able to transfer onto the water closet;

iv.   The trash can obstructs the required clear floor space around the water closet which prohibits individuals with disabilities from being afforded the opportunity to transfer onto the water closet.

v.    Defendant locates the trash can in front of the water closet and consequently obstructs the required clear floor space around the water closet which prohibits individuals with disabilities from being afforded the opportunity to transfer onto the water closet.

vi.   The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    **vii.** The paper towel dispenser exceeds the maximum allowed height of 48 inches above the finished floor;

    **viii.** Defendant fails to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

23. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

24. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

25. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facilities to make them readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facilities until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services, and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

26.  Plaintiff re-alleges paragraphs 1-25 above.

27.  The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1).

28.  The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See*, 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

29.   Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

30.   To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

31.   By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of

discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d

Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this

title prohibits, as well, discrimination in the provision of programs and activities

conducted by the public accommodation").

32. For that reason, the Act applies not only to barriers to physical access to places of

public accommodation, but also to any policy, practice, or procedure that operates

to deprive or diminish disabled individuals' full and equal enjoyment of the

privileges and services offered by the public accommodation to the public. 42

U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or

procedure that excludes individuals with disabilities from services. 42 U.S.C. §

12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.*,

294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory language
> at issue reveals that the definition of discrimination provided
> in Title III covers both *tangible barriers* (emphasis added),
> that is, physical and architectural barriers that would prevent
> a disabled person from entering an accommodation's
> facilities and accessing its goods, services and privileges, see
> 42 U.S.C. § 12182(b)(2)(A)(iv), and *intangible barriers*
> (emphasis added), such as eligibility requirements and
> screening rules or discriminatory policies and procedures
> that restrict a disabled person's ability to enjoy the defendant
> entity's goods, services and privileges.

**Defendant's Failed Practices and Lack of Policies are Discriminatory**

33.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

34.   Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

35.   As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as

Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

36.   Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

37.   Defendant's use of its restaurant, and its practices at the restaurant located at 1756 Carter Hill Road, Montgomery, Alabama 36106, create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Jimmy John's. Those practices include:

    a)   Defendant fails to provide ADA accessible parking with connecting accessible routes to the establishment from their parking area, which means that Plaintiff is forced to depend on assistance from a third party to access the Jimmy John's establishment, whereas non-disabled conveniently access the establishment from the parking area;

    b)   Defendant makes the ordering counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter to order in the way the non-disabled do, because the non-disabled have a counter they can use to order;

c) Defendant uses the accessible counter surface as a storage area, so that Plaintiff does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

d) Defendant makes the pickup counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

e) Defendant's seating arrangement is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Jimmy John's experience;

f) Defendant's use of its seating arrangement at Jimmy John's has a discriminatory effect in practice, so that Plaintiff is provided a "separate" and "unequal" benefit than the benefits that able-bodied individuals have when dining at Defendant's establishment because able-bodied individuals can sit at every type of seating table, whereas Plaintiffs are entirely prohibited from that same "opportunity" to considering where they want to sit;

g) Defendant fails to provide an accessible toilet room to Plaintiff and other disabled individuals, so that Mr. Thornton cannot relieve himself or move into and throughout the toilet room, which the able-bodied can freely do;

h) Defendant's practices are conducted without regard to disabled individuals;

38. Defendant's use of its restaurant, and its practices at the restaurant located at 1470 Taylor Road #104, Montgomery, Alabama 36117, create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Jimmy John's. Those practices include:

a) Defendant makes the ordering counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter to order in the way the non-disabled do, because the non-disabled have a counter they can use to order;

b) Defendant uses the accessible counter surface as a storage area, so that Plaintiff does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

c) Defendant makes the pickup counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

d) Defendant's seating arrangement is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an

experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Jimmy John's experience;

e) Defendant's use of its seating arrangement at Jimmy John's has a discriminatory effect in practice, so that Plaintiff is provided a "separate" and "unequal" benefit than the benefits that able-bodied individuals have when dining at Defendant's establishment because able-bodied individuals can sit at every type of seating table, whereas Plaintiffs are entirely prohibited from that same "opportunity" to considering where they want to sit;

f) Defendant fails to provide an accessible toilet room to Plaintiff and other disabled individuals, so that Mr. Thornton cannot relieve himself or move into and throughout the toilet room, which the able-bodied can freely do;

g) Defendant's practices are conducted without regard to disabled individuals;

h) Defendant's practices are conducted without regard to disabled individuals;

39. Defendant's use of its restaurant, and its practices at the restaurant located at 130 Commerce Street, Montgomery, Alabama 36104, create barriers and in so doing deny Plaintiff the full and equal enjoyment of the goods and services at Jimmy John's. Those practices include:

a) Defendant makes the ordering counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter to order in the way the non-disabled do, because the non-disabled have a counter they can use to order;

b) Defendant uses the accessible counter surface as a storage area, so that Plaintiff does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

c) Defendant makes the pickup counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Thornton cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

d) Defendant's seating arrangement is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Jimmy John's experience;

e) Defendant's use of its seating arrangement at Jimmy John's has a discriminatory effect in practice, so that Plaintiff is provided a "separate"

and "unequal" benefit than the benefits that able-bodied individuals have
when dining at Defendant's establishment because able-bodied individuals
can sit at every type of seating table, whereas Plaintiffs are entirely
prohibited from that same "opportunity" to considering where they want to
sit;

f) Defendant fails to provide an accessible toilet room to Plaintiff and other
disabled individuals, so that Mr. Thornton cannot relieve himself or move
into and throughout the toilet room, which the able-bodied can freely do;

g) Defendant's practices are conducted without regard to disabled individuals;

40. As the continuing architectural barriers and the failure to provide full and equal use
of the facility establishes, Defendant has no policies, practices, or procedures, or else
it has failed to implement them, to ensure that any removal of architectural barriers
is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

41. As the continuing architectural barriers and the failure to provide full and equal use of
the facility establishes, Defendant's existing practice is both in effect and/or explicitly
to remediate ADA Title III architectural barriers only upon demand by the disabled.

42. As the continuing architectural barriers and the failure to provide full and equal use
of the facilities establishes, Defendant has no policies, practices, and procedures or
else it failed to create, implement, and maintain policies and procedures to ensure
individuals with disabilities are able to have the same experience at its restaurants as
individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the
opportunity to have full and equal access to all of the goods, services, privileges,

advantages, or accommodations of Jimmy John's, as described above in detail.

43.   As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

44.   To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

45.   A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's restaurants consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of  Jimmy John's; (3) Jimmy John's will modify its practice of making ADA Title III architectural barrier remediation's only upon demand by the disabled.

46.   As pled above Freaky Fast 1 Inc. "operates" and "leases" its' Jimmy John's restaurants located at 1756 Carter Hill Road, Montgomery, Alabama 36106, 1470 Taylor Road #104, Montgomery, Alabama 36117, and 130 Commerce Street, Montgomery, Alabama 36104, is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

47.   The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

48.   By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

49.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

50.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

### COUNT THREE
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

51.   Plaintiff re-alleges paragraphs 1-50 above.

52.   42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

53.   Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §

12101(a)(2).

54. Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

55. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1), (2).

56. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the

individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

57. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

58. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq.*, and the regulations promulgated thereunder.

59. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No.

485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation").

60.   For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

61.   The keystone for this analysis is Defendant must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) *See also, Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

62.   Plaintiff, Christopher Thornton, was denied full and equal access to Jimmy John's. Plaintiff specifically and definitely wants to return to the Defendant's restaurants for the from-scratch food made with excellent ingredients, that offers locally purchased produce, which is brought in fresh and hand sliced daily to the public. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as

follows: Defendant failed to provide an accessible route from the parking areas to the
entrances for disabled individuals which means that unlike the non-disabled, the
disabled must struggle just to get to the entrances independently, if they can make it
at all; Defendant failed to provide Plaintiff the same experience that non-disabled
individuals have when dining at Jimmy John's; Defendant failed to provide the same
experience by making it nearly impossible for the disabled to access the ordering
counters, while the non-disabled can independently access the counters and the
services provided at the counters; Defendant failed to provide the same experience
by making it nearly impossible for the disabled to be able to independently access
items maintained on the ordering counters, while the non-disabled can independently
access the goods and services at the ordering counters; Defendant failed to provide
the same experience by making it nearly impossible for the disabled to access the
pickup counters, while the non-disabled can independently access the counters and
the services provided at the counters; Defendant failed to provide the same
experience by failing to provide seating tables for the disabled to dine in the dining
seating areas, to dine at the outside dining areas, while the non-disabled can fully use
the seating tables and bar seating; Defendant failed to make toilet rooms readily
accessible to and usable by Plaintiff and other disabled individuals; and all the
foregoing failures by Defendant inhibited Plaintiff from having the same experience
that non-disabled individuals have when at Jimmy John's.

63. In its Preamble to the Title III regulation, the Department of Justice recognized that
mobility impaired persons including persons in wheelchairs should have the same

opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

**64.** The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii), (iii); 28 C.F.R. § 36.202(b), (c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

**65.** Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50, *1990 U.S.C.C.A.N* at 473. The

ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (quoting *H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

66. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facilities during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Jimmy John's.

67. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

68. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facilities. 28 C.F.R.§ 36.211(a).

69. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecutionof this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**70.**   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of

Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facility for ADA compliance)*

**71.**   Plaintiff re-alleges paragraphs 1 - 70.

**72.**   42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct
> facilities for first occupancy later than 30 months after July 26,
> 1990, that are readily accessible to and usable by individuals
> with disabilities, except where an entity can demonstrate that it
> is structurally impracticable to meet the requirements of such
> subsection in accordance with standards set forth or incorporated
> by reference in regulations issued under this subchapter.

**73.**   Congress passed the ADA in part because "historically, society has tended to isolate

and segregate individuals with disabilities, and such forms of discrimination . . .

continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

Congress found that this discrimination included "segregation and relegation to lesser

services, programs, activities, benefits, jobs, or other opportunities." *Id.* §

12101(a)(5). In its Preamble to the title III regulation, the Department of Justice

recognized that persons in wheelchairs should have the same opportunities to enjoy

the goods and services and other similar events of a public accommodation with their

families and friends, just as other non-disabled individuals do. The DOJ further

recognized that providing segregated accommodations and services relegates persons

Page **58** of **64**

with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

74.    To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *Id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

75.    As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

76.    To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

77.  The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

78.  Defendant, as the "operator" of the Jimmy John's restaurants is directly involved in the designing and/or construction of its restaurants in this litigation for first occupancy after January 1993.

79.  Defendant was and is required to design and construct the Jimmy John's restaurants to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its restaurants to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its restaurants in compliance with the ADA during planned alterations as described throughout this Complaint.

80.  According to Defendant's own publicly available information, Defendant chose to design its restaurants in a way that is not ADA Title III compliant whatsoever. Defendant's systematic design of its restaurants fail to afford disabled individuals the same dining experience that is afforded to individuals without disabilities.

81.  To date, the Defendant's discriminating actions continue.

82.  Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

**83.** Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiff, Christopher Thornton, demands judgment against the Defendant on Counts One through Four of the Complaint and requests the following injunctive and declaratory relief:

**1.** That the Court declare that the properties owned and businesses operated by the Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

**2.** That the Court enter an Order enjoining the Defendant to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv), (v) and their implementing regulations, as stated in Count One;

**3.** That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

**4.** That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Jimmy John's experience and to the use of the Jimmy John's facilities, and further order Defendant to maintain the required accessible features at the restaurants so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.    That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.    That the Court enjoin Defendant to remediate the Jimmy John's restaurants to the proper level of accessibility required for the design and construction of the facilities for first occupancy, as stated in Count Four;

7.    That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff;

8.    That the Court award such other, further, and different relief as it deems necessary, just, and proper.


Respectfully Submitted, this the __19th__ Day of January, 2018.


/s/  *Cassie E. Taylor*
**CASSIE E. TAYLOR**
**AL Bar # 8297-N67R**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.356.5314 p
334.521.3859 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/ _____

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this _19ᵗʰ_ Day of January, 2018 to the following:


**FREAKY FAST 1 INC**
attn.: Registered Agent
1926 Mulberry Street
Montgomery, Alabama 36106



/s/  Cassie E. Taylor
**CASSIE E. TAYLOR**
**AL Bar # 8297-N67R**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.356.5314 p
334.521.3859 f
CET@ADA-Firm.com
*Attorney for the Plaintiff*


Page **64** of **64**